UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIRIAM MICHELLE MENDOZA,<br><br>Plaintiff,<br><br>v.<br><br>GENERAL MOTORS LLC, et al.,<br><br>Defendants. | Case No.: 1:16-cv-0967 - LJO - JLT<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR ADDITIONAL INSPECTION OF THE SUBJECT VEHICLE<br><br>(Doc. 58) |

Miriam Michelle Mendoza was severely injured after the Chevrolet Astro van in which she was riding, was involved in a collision. (Doc. 1-2 at 10) Plaintiff contends the "defendants designed and manufactured" the vehicle "in such a way that it could not withstand the type of rear end collision in which plaintiff was injured." (*Id.*) Defendants now seek additional discovery for further inspection of the subject vehicle. (Doc. 58) For the reasons set forth below, the motion is **GRANTED**.

**I.     Background and Procedural History**

On July 26, 2014, Plaintiff was a passenger in the third row of a 2002 Chevrolet Astro Van traveling on California State Highway 99, near Bakersfield, California. (Doc. 10 at 2; Doc. 68 at 2) According to Plaintiff, her "father was driving … at approximately 5-10 miles per hour in heavy stop-and-go traffic, when a smaller Volkswagen Passat hit the van from behind." (Doc. 68 at 2) She asserts "[t]he energy or (or delta-V) of the collision was approximately 20 miles per hour." (*Id.*)

Plaintiff was transported by paramedics to Kern Medical Center, where "doctors determined

that Michelle's cervical spine had been fractured and she was paralyzed from the neck down." (Doc. 68 at 2) Plaintiff alleges that she "and the other occupants in the Astro van were all using the safety restraint systems provided by GM," and "no one was permanently injured, except Michelle Mendoza."

Plaintiff alleges the defendants "knew or should have known about the lack of crashworthiness of the vehicle but sold it to the public anyway." (Doc. 1-2 at 10) In addition, Plaintiff asserts "the defendants did not do sufficient testing as to rear end crashworthiness of the vehicle, nor of the seats and seat backs of the vehicle and put the vehicle on the market with full knowledge of the defects." (*Id.*) Accordingly, Plaintiff filed a complaint in Kern County Superior Court Case No. BCV-16-100919-SPC on April 26, 2016 (Doc. 1-1 at 11), which she amended on June 21, 2016 (Doc. 1-2 at 5).

On July 6, 2016, Defendants filed a Notice of Removal, thereby initiating the matter with the District Court. (Doc. 1) The Court held a Scheduling Conference with the parties on October 7, 2016. (Doc. 12) At that time, the parties were ordered to complete all non-expert discovery no later than October 2, 2017, and all expert discovery no later than December 8, 2017. (Doc. 12 at 1) Plaintiff was directed to disclose all expert witnesses "on or before September 1, 2017, and to disclose all rebuttal experts on or before October 30, 2017." (*Id.* at 3, emphasis omitted). In addition, Defendants were ordered to "disclose all expert witnesses in writing on or before October 2, 2017." (*Id*. at 3, emphasis omitted).

In August 2017, Defendants made "a verbal request" during an expert's inspection[1] of the vehicle to remove and detrim the seat in which Plaintiff had been sitting at the time of the accident. (Doc. 68 at 3) Plaintiff denied the request. (*Id.*)

The same month, Plaintiff and Defendants filed a joint motion to amend the scheduling order, reporting that "a GM LLC corporate representative deposition could not be scheduled before Plaintiff's September 1, 2017 expert disclosure deadline." (Doc. 25 at 2) Therefore, the parties requested an extension of the discovery deadlines. (*Id.* at 2-3) The Court granted the joint request in part, and ordered "[a]ll expert discovery… be completed no later than **January 19, 2018**." (Doc. 26 at 2) Plaintiff was directed to "disclose her experts no later than November 3, 2017 and the defendant [t]

---
[1] It is undisputed that the plaintiff permitted multiple inspections of the vehicle as long as it did not despoil any portion of the vehicle.

disclose its experts no later than November 29, 2017." (*Id.*, emphasis omitted) In addition, Plaintiff was directed to disclose any rebuttal experts on or before December 22, 2017. (*Id.*)

In November 2017, Defendants filed a motion to amend the scheduling order (Doc. 43), with a motion for an order shortening time, which was opposed by Plaintiff (Doc. 44). On November 29, 2017, the Court held a teleconference with the parties regarding Defendants' request for additional time to disclose their experts. (Doc. 50) Following the conference, the Court issued an order noting: "counsel agreed that the defendants would have four additional weeks to make the disclosure despite that the defendants preferred six weeks. This agreement was with the understanding that the plaintiff would have additional time to make her rebuttal disclosures and that the non-dispositive motions deadline would be extended." (Doc. 51 at 1) Pursuant to the agreements reached during the conference, the Court ordered Defendants to "disclose their experts no later than December 27, 2017" and for any rebuttal experts to be disclosed by Plaintiff "no later than January 24, 2018." (*Id.*, emphasis omitted) The Court directed the parties to file any non-dispositive motions no later than February 28, 2018, to be heard no later than March 28, 2018. (*Id.*) However, the Court inadvertently failed to include the agreement related to the extension of time to complete expert discovery by February 21, 2018.

On January 24, 2018, Plaintiff disclosed her rebuttal expert report prepared by Mark Pozzi. (Doc. 58 at 2; Doc. 68 at 3) Defendants contend that in that rebuttal report, Mr. Pozzi "criticized GM LLC's experts for 'failing' to conduct what he considered to be an 'adequate investigation' of the van." (Doc. 58 at 2) In addition, Defendants assert, "In their rebuttal reports, plaintiff's witnesses conducted additional inspections of the subject van and other van components." (*Id.* at 2-3) The defendants contend that Mr. Pozzi's "rebuttal reports contain new and more detailed information about the seat's condition." (*Id.* at 3) Defendants argue that the removal "and de-trimming (taking the cushions off) the seat will provide crucial additional evidence on these issues." (*Id.* at 3)

On February 23, 2018, "GM LLC's counsel sent Ms. Mendoza's counsel a meet and confer letter" regarding the "renewed request to allow [Defendants'] to remove and detrim the third-row seat." (Doc. 68 at 4)

At the hearing, the defendants reported that if they were permitted a further inspection of the

3

vehicle, their experts would first use a "lipstick" camera to try to observe the seat's track and structure of the seat. If that failed to provide a sufficient view of the area at issue, they would seek to detrim the seat cushion and, only if that failed would they seek to remove the seat from the vehicle. Counsel reported that the defendants did not intend to remove the headliner or disturb it in any manner.

The plaintiff argues that removing the seat would destroy the jury's ability to view the interior of the van as it looked after the collision and, in doing so, destroy the jury's ability to understand the spatial relationships inside the van.

**I.     Scope of Discovery**

The scope and limitations of discovery are set forth by the Federal Rules of Civil Procedure. In relevant part, Rule 26(b) states:

> Unless otherwise limited by court order, parties may obtain discovery regarding any nonprivileged manner that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the accident. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b). Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Relevancy is interpreted "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

**II.    Timeliness**

A scheduling order "controls the course of the action unless the court modifies it." Fed. R. Civ. P. 16(d). Scheduling orders are intended to alleviate case management problems. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992). As such, a scheduling order is "the heart of case management." *Koplove v. Ford Motor Co.*, 795 F.2d 15, 18 (3rd Cir. 1986). Scheduling orders are "not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Johnson*, 975 F.2d at 610 (quoting *Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Maine 1985)). Good cause must be shown for modification of the scheduling order. Fed. R. Civ. P. 16(b)(4).

The Ninth Circuit explained:

> Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension. Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. Although the existence of a degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for modification. If that party was not diligent, the inquiry should end.

*Johnson*, at 609 (internal quotation marks and citations omitted).

The defendants' attorney admits that he received the expert's report in January, but, due to other demands on his schedule, did not raise the reinspection issue with opposing counsel until February. Though the Court does not condone this lack of attention paid to this case, the delay was not so egregious as to constitute a lack of diligence.

On the other hand, the plaintiff argues that the defendants have wanted to remove and detrim the seat since August 2017 and they should have sought the Court's intervention on this topic long before now. However, the Court does not consider this time period in its calculus here because it appears that the defendants abandoned this position until Mr. Pozzi provided his rebuttal report. It appears that the defendants, in recognizing that the plaintiff has the burden of proof, decided to address only what plaintiff's experts raised in their original reports and was caught flat-footed when the rebuttal report seemed to punch significant holes in their defensive theories. Ordinarily, the Court would have little tolerance for this tactic and would hold the party to the consequences of taking this approach. However, at least some of what Mr. Pozzi notes in his rebuttal report seems to constitute new opinions that could have been offered in his original report had his original inspection of the van been as comprehensive at the one he completed after learning of the opinions offered by the defense experts. Thus, the Court disagrees that this does not give rise to a reasonable request by the defense to again inspect the van.

**III.    Requests for Production**

Under Fed. R. Civ. P. 34(a)(2), a party may obtain "entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it."

"The decision whether to allow testing, including destructive testing, falls within the sound discretion of the court." *Holmes v. J.M. Products, Inc.*, 2005 WL 927172, at *3 (W.D.Tenn. Jan.07, 2005) (citing *Ostrander v. Cone Mills, Inc.*, 119 F.R.D. 417, 418 (D.Minn.1988)). The Court must "balance the respective interests by weighing the degree to which the proposed inspection will aid in the search for truth against the burdens and dangers created by the inspection." *Scruggs v. Inter'l Paper Co.*, 278 F.R.D. 698, 700 (S.D.Ga. Jan.12, 2012).

The plaintiff relies heavily on *Mirchandani v. Home Depot, U.S.A., Inc.*, 235 F.R.D. 611, 616 (D. Md. 2006). *Mirchandani* provides a four-factor test to consider when determining whether to permit destructive testing:

> 1) Whether the proposed testing is reasonable, necessary, and relevant to proving the movant's case; 2) Whether the non-movant's ability to present evidence at trial will be hindered, or whether the non-movant will be prejudiced in some other way; 3) Whether there are any less prejudicial alternative methods of obtaining the evidence sought; and 4) Whether there are adequate safeguards to minimize prejudice to the non-movant, particularly the non-movant's ability to present evidence at trial.

*Id*. at 614. Thus, assuming without deciding that *Mirchandani* presents the proper considerations[2], the Court will consider each factor.

**A.   Reasonable, necessary and relevant**

The defendants argue that the destructive testing is necessary. They assert that, "In a nutshell, Ms. Mendoza's witness is expressing new opinions about how the seat moved, and alleging there is physical evidence to support his opinions- evidence that can only be seen clearly by removing the seat to examine the track. In fairness, GM LLC should be allowed to obtain all the available facts to test these new opinions. For example, physical evidence on the seat track will provide additional, potentially decisive evidence regarding how the seat was positioned and how it moved in the impact. Removal of the third-row seat to inspect the seat track and to 3-D scan the interior is the only way GM LLC can adequately defend against Ms. Mendoza's claims." (Doc 68 at 14) In particular, the defendants note that Mr. Pozzi now opines that, "The right seat track of the third row seat shows permanent deformation of the upper track, consistent with the front track roller being rammed into

---

[2] *See Synbias Pharma v. Solux Corp.*, 2013 WL 12095236, at *3 (S.D. Cal. June 5, 2013); *Holmes v. J.M. Products, Inc.*, 2005 WL 927172, at *3 (W.D.Tenn. Jan.07, 2005); *Scruggs v. Inter'l Paper Co.*, 278 F.R.D. 698, 700 (S.D.Ga. Jan.12, 2012).

the mechanical stop. This deformation was caused by the roller being forced rearward and upward against the mechanical stop." Id. The defendants then assert, "Whether this actually happened is something that can only be confirmed by removing the seat and examining the track." Id. The defendants assert also that that Mr. Pozzi opined,

> "The seat track failure is a clear safety defect that demonstrates the lack of crashworthiness of the rear seat and structure of the Astro van in this collision…. The wire releasing the driver side seat track is fully exposed to any object that could place fingertip-force loading on the wire. There is no guarding or other protection to prevent such inadvertent actuation of this release wire. The seat track release only requires fingertip pressure to fully actuate. There is no 'lock for the latch' which one should expect if GM warns about the dangers to occupant safety for such seats to unlatch or otherwise move in their tracks while the vehicle is moving, especially in a collision. A single coil spring acting on the release lever is the only mechanism that acts to keep the release lever in place. There are spring mechanisms to position the locking pawl on the seat track. There are no locks for these latches, or any viable secondary latch mechanism that serves to maintain the seat track in its latched position during a crash, even without localized deformation."

Id. They characterize each of these statements as new opinions. Id.

The plaintiff argues that Mr. Pozzi's opinions at issue here rebut those offered by the defendants' experts who claims that the plaintiff was "out of position" at the time of the collision. (Doc. 68 at 8) Clearly, Mr. Pozzi conducted the reinspection of the van *due* to the opinions of the defendants' experts, but it is equally clear that his new opinions will not be offered in rebuttal, but now will be offered as affirmative evidence to support the plaintiff's case-in-chief. As noted above, at the time he formed his original opinions, had Mr. Pozzi thought to make the examination that he made only after learning of the opposing opinions, no further inspection would now be contemplated.

The defendants argue that permitting the inspection they request is necessary to counter the new affirmative opinions. The plaintiff counters by asserting, "Everything and anything of importance that could be legitimately learned from [the destructive testing] could be learned by studying exemplar seats in exemplar vehicles (as plaintiff's experts have done) or actually inspecting the subject seat in the subject vehicle carefully." The Court disagrees.

First, the plaintiff is entitled to decide when an issue is fully investigated for her own case; she is not entitled to make this determination for her opponents. *Ostrander,* 119 F.R.D. at 420 ["When experts disagree on the relevancy of certain evidence, it would be unjust to select the view of one of those experts with the result that another party's discovery is thereby barred. It is premature during the

1 discovery stage to make what is essentially an evidentiary ruling."] If the subject of this further
2 investigation was not relevant, the plaintiff could resolve this issue easily by withdrawing Mr. Pozzi's
3 opinions that are not in the nature of pure rebuttal. Moreover, the purpose behind Rule 26 is for the
4 parties to have a fair opportunity to gather sufficient information to prove its case and to counter that
5 which will be put forth by the opponent. Second, the defendants suggest a cautious approach toward
6 gathering the additional information starting with the use of a lipstick camera which, of course, would
7 not cause any change to the van as it currently appears.

       **B.**       **Whether plaintiff's trial presentation will be hindered or she will suffer prejudice**

9        The plaintiff argues that if destructive testing is permitted (specifically, removal of the seat from
10 the van) the jury will be deprived of the ability to see the spatial relationships between the plaintiff's
11 position at the time of the collision and the damage to the headliner "and the rest of the vehicle's
12 interior." (Doc. 68 at 19) Notably, the plaintiff asserts that the experts—for both sides—have scanned
13 the interior of the van at least five times such to preclude the need for the further
14 reinspection/destructive testing sought here. However, at the hearing, plaintiff's attorney asserted that
15 the scans are quite unreliable and, in fact, can be off by as much as six inches. If this is true and the
16 margin of error cannot be mitigated, the Court cannot comprehend why the experts would waste their
17 time on creating these scans. Also unexplained is or how these unreliable and error-ridden scans could
18 provide the defendants the ability to fully visualize the seat track. Seemingly, the unreliability of the
19 scans would underscore the need for the type of inspections sought now.

20        Detrimming the seat will cause a change in the appearance of the seat in a way that cannot cause
21 it to be returned to its identical current state.   However, by its nature, the seat, which is covered by
22 foam and fabric, loses it uncompressed appearance whenever weight is applied to it. The extent to
23 which its appearance changes, depends upon the amount and location on the seat of weight placed on it.
24 Thus, it is likely to be unknowable how the seat appeared in the seconds just before the collision. Also,
25 it appears that at the moment of impact, the plaintiff was ejected from the seat—at least to some
26 extent—which forced her head to strike the roof of the van. (See 68-4 at 8) Consequently, the seat
27 would have returned to its uncompressed state for the time that the plaintiff was thrust out of her seat.
28 Thus, the Court fails to grasp how the jury would learn anything of significance from looking at the

undisturbed upholstery. Therefore, at best, the only information to be gleaned from the jury observing the undisturbed upholstery seems to be the amount of space between the top of the seat's upholstery and the headliner where the plaintiff struck her head. This information—with its apparent minimal probative value—does not outweigh the need to verify the truth of what caused the plaintiff's devastating injury.

### C. Less prejudicial alternatives

The plaintiff asserts that there are less prejudicial alternatives to the inspection/destructive testing sought by the defendants but identifies only visual observation of the undisturbed seat as that alternative. Thus, the plaintiff seems to concede there is no middle ground between her position and that of the defendants.

On the other hand, as noted above, the defendants reported at the hearing that they will not seek to remove the headliner at all and will first seek to visualize the seat track using a lipstick camera. Only if this fails to accommodate the inspection that the experts need, would the seat be detrimmed so that the expert can look down and through the seat structure to visualize the seat track. Then, only if this proves ineffective would removal of the seat structure be necessary. The Court agrees that this measured approached should be taken and will require it.

### D. Adequate safeguards

The Court will not tolerate or permit any further inspection or testing of the van—whether by the defendants' experts or by the plaintiff's—after that ordered here. Thus, any expert who needs to be present to at the time of this single, additional reinspection, must be there to document (through photos, scans, measurements, video, etc.,) whatever is needed to be documented for purposes of preparing for trial testimony.

### E. Conclusion

After considering the factors, the Court concludes that the importance of the search for the truth dictates that the reinspection be permitted.

**ORDER**

Based upon the foregoing, the Court **ORDERS**:

1. The parties' experts **SHALL** be permitted one additional reinspection of the van related

9

*only* to the opinions expressed by Mr. Pozzi and only those that were not expressed in his original report. They may also document the portion of the headliner at issue through photos, scanning or other non-destructive means. This inspection **SHALL** occur immediately but in no event may it occur more than 30 days hence.

The defendants **SHALL** first attempt to inspect the seat track by using a lipstick camera or other non-destructive device. In the event this fails to yield the needed view, the defendants' expert may detrim the seat. However, the expert **SHALL** immediately prepare and file a statement, signed under penalty of perjury, explaining to the Court what information was expected to be gleaned by detrimming the seat and whether that information was, in fact, gathered once the detrimming was completed. The statement **SHALL** affirm that the opinion that the seat needed to be detrimmed was formed by the expert and explain why there was no reasonable alternative to detrimming the seat.

If detrimming the seat fails to yield the information sought, counsel for the parties **SHALL** immediately confer with the Court before removing the seat from the van. At that time, the Court will expect the experts to explain to the Court why the previous efforts failed to yield the needed information and why removing the seat is necessary;

2. The parties' experts may provide supplemental reports, limited to detailing the additional opinions or information gathered from the reinspection that bears on their previously disclosed opinions. Any supplemental reports **SHALL** be exchanged within 14 days of the reinspection. If these reports generate a need for second depositions of experts, counsel **SHALL** meet and confer to resolve whether the depositions will go forward and, if so, when they will occur. If they cannot agree, they **SHALL** immediately seek a telephonic conference with the Court according to the procedures set forth in the scheduling order.

IT IS SO ORDERED.

Dated: **April 3, 2018**                **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE