| | |
|---|---|
| MIRIAM MICHELLE MENDOZA,<br><br>Plaintiff,<br><br>v.<br><br>GENERAL MOTORS LLC, GENERAL MOTORS CORPORATION, CHEVROLET DIVISION OF GENERAL MOTORS, MOTORS LIQUIDATION COMPANY, AND DOES 1 TO 15,<br><br>Defendants. | CASE NO. 1:16-cv-00967-LJO-JLT<br><br>MEMORANDUM DECISION AND ORDER RE DEFENDANT GM LLC'S MOTION FOR DETERMINATION OF CHOICE OF LAW ISSUES AND MOTION TO EXCLUDE THE TESTIMONY OF KENT JAYNE<br><br>ECF Nos. 59, 66 |

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

## I. INTRODUCTION

Plaintiff Miriam Michelle Mendoza ("Mendoza" or "Plaintiff") brings this action against Defendants General Motors ("GM") LLC, GM Corporation, Chevrolet Division of General Motors, Motors Liquidation Company, and Does 1 through 50 (collectively, "Defendants"), alleging a cause of action for products liability. Complaint ("Compl."), ECF No. 1-2. Now before the Court is Defendant GM LLC's motion for a determination of choice of law issues and motion to exclude the testimony of Plaintiff's expert Kent Jayne. This matter is suitable for disposition without oral argument. *See* Local Rule 230(g).

## II. BACKGROUND

On July 26, 2014, Plaintiff Miriam Michelle Mendoza's father was driving her family's 2002 Chevrolet Astro southbound on SR-99 near Bakersfield, California when the vehicle was rear-ended by

1

another vehicle. The family was on their way home to Des Moines, Iowa, having spent a family vacation in California visiting Plaintiff's aunt. Plaintiff, who was sixteen years old at the time, was seated in the third row seat on the passenger side. Plaintiff was extricated from the vehicle and taken to Kern Medical Center, where it was discovered that her cervical spine had been fractured and that she was paralyzed from the neck down. Plaintiff spent three weeks receiving emergency medical treatment in California before returning to Iowa on August 19, 2014. Thereafter, she received additional medical treatment, inpatient rehabilitation, and outpatient therapy and rehabilitation in Iowa. Specifically, Plaintiff was an inpatient at the ChildServe rehabilitation facility for seven months following her return to Iowa. She has been diagnosed with a spinal cord injury resulting in permanent, complete quadriplegia. Plaintiff lives at home with her parents in Iowa and continues to receive medical care in Iowa. Plaintiff alleges that the Astro's rear structural crashworthiness was defective due to the Astro's trailer hitch assembly and the assembly's interaction with the floor pan in the area of the third row seat.

Plaintiff is, and has always been, an Iowa resident. She currently resides with her family in Des Moines, Iowa.

Defendant is incorporated in Delaware and headquartered in Michigan. The Astro van was designed, engineered, and tested in Michigan, primarily at General Motors Corporation's Technology Center in Warren, Michigan and its Proving Grounds in Milford, Michigan.

### III. <u>CHOICE OF LAW</u>

Defendant GM LLC argues that California law should not apply to the issues of liability and damages because California's interest in this Plaintiff is minimal. Plaintiff has always been, and continues to be, a resident of Iowa. She was injured while on vacation with her family in California and, according to Defendant, that California's interest in the dispute is insufficient to justify application of California law. Defendant instead posits that Michigan law should apply to Plaintiff's products liability claim and that Iowa law should apply to the measure of damages. Plaintiff counters that Defendant has not met its burden of showing that the interests of either jurisdiction outweigh the interests of California

such that Michigan or Iowa law should apply here.[1]

**A.      Legal Standard**

In a diversity action, a federal court sitting in California must apply California choice of law rules. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941); *Abogados v. AT & T, Inc.*, 223 F.3d 932, 934 (9th Cir. 2000). California courts decide choice of law questions by means of the "governmental interests" analysis. *In re Yagman*, 796 F.2d 1165, 1170 (9th Cir. 1986). This choice of law analysis embodies the presumption that California law applies unless the proponent of foreign law can show otherwise. *Browne v. McDonnell Douglas Corp.*, 504 F. Supp. 514, 517 (N.D. Cal. 1980).

California's governmental interest analysis of choice of law conflicts involves a three-step process. *See Abogados*, 223 F.3d at 934; *McGhee v. Arabian American Oil Co.*, 871 F.2d 1412, 1422 (9th Cir. 1989); *see also Hurtado v. Superior Court*, 11 Cal. 3d 574 (1974); *Reich v. Purcell*, 67 Cal. 2d 551 (1967). First, the Court must determine whether the substantive law of the two states differs. *Id.* The foreign law proponent carries the burden of proving that the states' laws differ materially. *Id.* Second, if the laws are "materially different," the Court must "determine what interest, if any, each state has in having its own law applied to the case." *Id.* at 920. Third, if each state has an interest in having its law applied, the Court must "select the law of the state whose interests would be 'more impaired' if its law were not applied." *Id.*; *see also Keilholtz v. Lennox Hearth Products Inc.*, 268 F.R.D. 330, 341 (N.D. Cal. Feb. 16, 2010) (party advocating application of foreign law bears the burden of showing that that foreign law should apply). In weighing the interests of each state in applying its own law, the Court does not "'weigh' the conflicting interests in the sense of determining which law manifests the 'better' or 'worthier' social policy on the issue." *Chen v. L.A. Truck Ctrs., LLC*, 7 Cal. App. 5th 757, 768 (2017).

---

[1] Neither party objects to the Court's resolving this issue at this stage in the litigation. *See Munguia v. Bekins Van Lines, LLC*, No. 1:11-CV-01134-LJO, 2012 WL 5511749, at *1 (E.D. Cal. Nov. 14, 2012) ("This Court finds, however, that early resolution of legal matters can often be helpful in assisting the parties to define the scope of their litigation . . . .").

"Instead, we are determining the proper allocation of law-making power in a multi-state context – we determine the appropriate limitations of the reach of state policies." *Id.*

"A party advocating application of foreign law 'must demonstrate that the [foreign] rule of decision will further the interest of that foreign state and therefore that it is an appropriate one for the forum to apply to the case before it." *Tucci v. Club Mediterranee, S.A.*, 89 Cal. App. 4th 180, 188-89 (2001). "If California law can be applied without violating the policy of the foreign state, there is a false conflict, and California law should be applied." *Keilholtz*, 268 F.R.D. at 341 (citing *id.*).

**B.     Application**

      **1.     Plaintiff's Products Liability Claim**

Applying the three part governmental interest analysis here, the parties agree that there is a conflict between California law and Michigan law as it applies to Plaintiff's products liability claim. While California allows a plaintiff seeking to recover damages for injuries sustained as the result of a defective product to sue under a strict liability theory, Michigan does not recognize the strict products liability theory asserted in this case. ECF No. 66 at 8 (citing *Harford Fire Ins. Co. v. Walter Kidde Co.*, 328 N.W.2d 29, 33 (Mich. 1982)); ECF No. 71 at 6. To prevail under Michigan law, Plaintiff would have to prove that there is a reasonable alternative design that would reduce the foreseeable risk of harm posed by the product. *See Peck v. Bridgeport Machines*, 237 F.3d 614, 617-18 (6th Cir. 2001). No such showing is required under California's strict products liability scheme. *See generally Jimenez v. Sears, Roebuck & Co.*, 4 Cal. 3d 379 (1971). Therefore, the first prong of the governmental interest test is satisfied.

Next, the Court turns to the question of what interest each state has in having its own law apply. California has an interest in "applying its products liability rule to conduct occurring within its borders." *Browne*, 504 F. Supp. at 518-19. California is the place where Plaintiff's injury occurred, and the state has an interest in promoting the safety of guests and tourists within its borders. Therefore, it has an interest in providing remedies for injuries caused by defective products that make their way to California

through the flow of commerce and tourism. California also has an interest in deterring the introduction of defective vehicles into the state. *Chen*, 7 Cal. App. 5th at 771 ("The primary purpose of California's strict products liability law is to insure that the cost of injuries of defective products is borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves."). Unsafe highway conditions tax California's resources, such as the California State Highway Patrol and emergency medical services. For example, Plaintiff's injury resulted in the response of two California fire departments and at least ten emergency medical services technicians and paramedics.

By contrast, Defendant argues that the tortious conduct – the design, engineering, and testing – of the allegedly defective Astro occurred in Michigan. They further point out that Michigan has an interest in protecting Michigan businesses from excessive financial liability and promoting a legal climate favorable to protecting and attracting business. Defendant argues that California has no interest in applying its own law here, explaining its position that in this case California is merely "the fortuitous location of an injury that could have occurred anywhere." *See* ECF No. 66. at 9 (citing *Browne*, 504 F. Supp. at 517). Defendant points out that none of California's potential interests in a personal injury case – compensation of resident plaintiffs, deterrence of wrongful conduct by resident defendants, and limitation of damages recoverable against resident defendants – would be satisfied here by the application of California law.

With respect to Defendant's argument that the conduct at issue here actually occurred in Michigan, as opposed to California, the Court disagrees. Generally speaking, the location of the tort is the site of the injury. *Hernandez v. Burger*, 102 Cal. App. 3d 795, 802 (1980) (noting that the jurisdiction of the "situs of the injury" is generally assumed to have the "predominant interest" in "regulating or affecting conduct within its borders"); *see also* Restatement (Second) Conflict of Laws § 146, Comment (e) (noting that when the tortious conduct and the injury occur in different states, the local law of the state of injury should usually apply because "persons who cause injury in a state should

not ordinarily escape liability imposed by the local law of that state on account of the injury"). The injury took place in California; California is the place of the regulated conduct for purposes of this analysis. Although the location of the injury is not dispositive to the choice of law question under California law, it is still highly relevant. *Hernandez*, 102 Cal. App. 3d at 802. Defendant must therefore overcome the burden of proving that another state has the predominate interest in regulating the conduct that occurred in California. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 592 (9th Cir. 2012) ("California law also acknowledges that 'a jurisdiction ordinarily has 'the predominant interest" in regulating conduct that occurs within its borders . . . .'") (citations omitted).

Defendant argues that the location of the accident in California was "fortuitous" and therefore does not provide a basis for using the law of the forum. Defendant points to the cases dealing with airplane crashes, where courts have tended to apply the laws of the injured person's domicile as opposed to the law of the crash site. *See, e.g.*, *Browne*, 504 F. Supp. at 517; *Reno Flying Servs., Inc. v. Piper Aircraft, Inc.*, No. 13-CV-04346 NC, 2014 WL 6629531, at *1 (N.D. Cal. Nov. 21, 2014). However, the airplane crash cases are not truly analogous. Although Plaintiff is not a California resident, Plaintiff and her family came to California to visit family. California has an interest in protecting its guests from harm incurred from defective products. *Chen*, 7 Cal. App. 5th at 771-72 ("the policy behind strict products liability is greater than simple plaintiff compensation . . . it implicates the public policy that the cost of defective products be borne by the manufacturers who put such products on the market."). Unlike airplane crashes that occur in places to which the injured individuals may have no connection, Plaintiff and her family intentionally availed themselves of the California highway system, and are now prevented from returning to visit family due to the injuries Plaintiff sustained during that trip. California's interest in applying strict liability against companies that design defective products that cause injury in California would be impaired if Michigan law, which does not recognize strict liability, applied. *See id.* at 771 (applying California law to a products liability case where plaintiffs were not residents of California, concluding that California's interest in applying its products liability law

6

prevailed over the interests of the place of manufacture because the primary purpose of California's strict products liability law is to ensure that the costs of defective products are borne by the manufacturers "rather than by the injured persons who are powerless to protect themselves").

On the other hand, while Michigan's interest in not exposing resident defendants is impaired by California's strict liability scheme, Michigan's interest in protecting resident defendants cannot extend beyond its borders to torts committed in other states against non-Michigan plaintiffs. Such an application of the governmental interest analysis would allow Michigan law to apply to products liability actions against its corporate residents throughout the entire country. Indeed, Michigan courts have generally refused to apply Michigan law to products liability cases where Michigan's only connection to the lawsuit is that it is the location of the defendant manufacturer. *See Farrell v. Ford Motor Co.*, 501 N.W.2d 567, 572-73 (Mich. App. 1993); *Hampshire v. Ford Motor Co.*, 399 N.W.2d 36, 38 (Mich. App. 1986); *see also Phillips v. Gen. Motors Corp.*, 995 P.2d 1002 (Mont. 2000) (refusing to apply Michigan law where case involved plaintiffs driving from Montana to North Carolina in a GM car designed in Michigan, noting that "Michigan has little interest in applying its law when its only contact with the dispute is the location of the manufacturer") (citations omitted).

In evaluating which state's interest would be more impaired by the application of the other jurisdiction's law, the Court determines that Defendant has not met its burden of showing that Michigan law has the prevailing interest in having its law applied to the products liability claim in this case. *Mazza*, 666 F.3d at 592 ("California law also acknowledges that 'a jurisdiction ordinarily has 'the predominant interest" in regulating conduct that occurs within its borders . . . .'") (citations omitted). California has an interest in deterring defective products from reaching its jurisdiction and in compensating persons injured in its borders by defective products. Michigan's only connection to this case – that it is Defendant's headquarters and was the place of design and manufacture – has been held by courts in Michigan and elsewhere to be an insufficient basis for the application of Michigan law. Therefore, California law will apply.

## 2. Law Applicable to Plaintiff's Damages

With respect to the damages question, the parties also agree that California and Iowa law conflict. California's 1% joint-and-several liability rule holds that any defendant who is even 1% at fault is jointly and severally liable for all economic damages, while Iowa law imposes a hybrid comparative fault scheme, which only holds defendants jointly and severally liable if they are more than 50% at fault. *See* ECF No. 66 at 8; ECF No. 71 at 6; *see also Browne*, 504 F. Supp. at 518-19 (recognizing the conflict between California's 1% join-and-several liability rule and comparative fault regimes). Because there is a true conflict, the Court turns to the second and third prong of the analysis.

In *Hurtado v. Superior Court*, 11 Cal. 3d 574 (1974), a Mexican national was killed in an automobile accident in California by a California defendant. The Mexican national's heirs were also Mexican nationals, and Mexico imposed a monetary limitation on recoverable damages in wrongful death cases that conflicted with California's law, which had no such limitation. The court refused to apply Mexico's damages limitation. Rather, the court found that "[t]he interest of a state in a tort rule limiting damages for wrongful death is to protect *defendants* from excessive financial burdens or exaggerated claims." *Id.* at 580–81 (emphasis added). The court also concluded that "Mexico has no interest in applying its limitation of damages in wrongful death actions to nonresident defendants or in denying full recovery to its resident plaintiffs." *Id.* at 586–87. "*Hurtado* show[s] that California courts are reluctant to impose foreign laws that restrict a plaintiff's ability to recover damages unless the defendants are residents of, or connected to, the foreign state where such limitations apply." *Munguia v. Bekins Van Lines, LLC*, No. 1:11-CV-01134-LJO, 2012 WL 5198480, at *7 (E.D. Cal. Oct. 19, 2012), *report and recommendation adopted*, No. 1:11-CV-01134-LJO, 2012 WL 5511749 (E.D. Cal. Nov. 14, 2012); *see also Camp v. Forwarders Transport, Inc.*, 537 F. Supp. 636, 640 (C.D. Cal. 1982) (applying California law as opposed to Oklahoma law, concluding that "Oklahoma has no interest in whether a New Jersey defendant is held jointly liable for the entire amount of damage; the Oklahoma law of several liability was adopted for the benefit of Oklahoma defendants").

Here, too, the Court concludes that Iowa's interests would not be impaired by the application of California law. Iowa has an interest in ensuring that its residents are compensated for tort injuries. California law would not compensate Plaintiff to a lesser extent than Iowa law would – if anything, it would compensate her more. Furthermore, Iowa has no interest in ensuring that Defendant, who is not an Iowa resident, is not held joint and severally liable. As in *Hurtado*, the Court declines to apply the damages rule of a foreign jurisdiction where that jurisdiction has no obvious interest in limiting Plaintiff's recovery, nor does that jurisdiction have any apparent interest in protecting non-resident Defendant GM LLC from potential additional liability. *Camp v. Forwarders Transp., Inc.*, 537 F. Supp. 636, 640 (C.D. Cal. 1982). Because Iowa's apparent interests in this case – ensuring compensation of its resident plaintiff and protecting its domestic defendants from joint and several liability if they are less than 50% at fault – are not impaired by the application of the law of the forum, California law applies. Defendant's motion for a determination that Michigan and Iowa law apply to this case is DENIED.

## IV. *DAUBERT* MOTION

Defendant moves to exclude the expert testimony of Kent Jayne for allegedly failing to meet the reliability and fitness requirements of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny.

**A.     Legal Standard**

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Under Rule 702, a proposed expert witness must first qualify as an expert by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The proposed expert witness may then testify in the form of an opinion if: "(a) the expert's . . . specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." *Id.*

The trial court serves a special "gatekeeping" function with respect to Rule 702. *Kumho Tire Co.*

*v. Carmichael*, 526 U.S. 137, 147 (1999). The trial court must make an initial assessment of the proposed expert testimony to ensure that it "rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). In other words, the trial court must consider (1) whether the reasoning or methodology underlying the expert testimony is valid (the reliability prong); and (2) whether the reasoning or methodology can be applied to the facts in issue (the relevancy prong). *See id.* at 592-93.

To determine the reliability of expert testimony, the Supreme Court has identified four factors that a trial court may consider: "(1) whether the 'scientific knowledge . . . can be (and has been) tested'; (2) whether 'the theory or technique has been subjected to peer review and publication'; (3) 'the known or potential rate of error'; and (4) 'general acceptance.'" *Obrey v. Johnson*, 400 F.3d 691, 696 (9th Cir. 2005) (quoting *Daubert*, 509 U.S. at 593-94). These factors, however, are not exclusive. *See Kumho Tire*, 526 U.S. at 150 ("*Daubert* makes clear that the factors it mentions do *not* constitute a definitive checklist or test.") (emphasis in the original) (citation and internal quotation marks omitted). Rather, the trial court enjoys "broad latitude" in deciding how to determine the reliability of proposed expert testimony. *Id.* at 141-42. As to relevancy, the Supreme Court has explained that expert testimony is relevant if it assists the trier of fact in understanding evidence or determining a fact in issue in the case. *Daubert,* 509 U.S. at 591.

The proponent of the expert testimony carries the burden of proving its admissibility. Fed. R. Evid. 702, advisory committee's note (2000 amend.); *see Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). In the context of expert scientific testimony, the Ninth Circuit has explained that the proponent meets this burden by offering "some objective, independent validation of the expert's methodology" establishing that the expert's findings are based on "sound science." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995) ("*Daubert II*").

**B.     Application**

Plaintiff's expert Kent Jayne is offered as an expert in the areas of Plaintiff's life care needs and

the costs associated with such needs, based on his knowledge, experience, and education in the field as a rehabilitation counselor and economist. Mr. Jayne has a Bachelor's degree in Economics, a Masters of Business Administration, and a Masters in Rehabilitation Counseling. ECF No. 70-2. He is a certified rehabilitation counselor and life care planner with decades of experience as a vocational economic consultant and rehabilitation economics specialist. (*Id.*) Based on his training and experience, the Court concludes that Mr. Jayne is qualified to opine on Plaintiff's life care costs and her vocational prospects and earning capacity.[2]

Defendant outlines three principal objections to Mr. Jayne testifying as Plaintiff's expert. First, Defendant contends that Jayne's reports are "based on errors omissions, speculation, and undocumented information." ECF No. 59 at 7. Second, Defendant argues that Jayne's opinions regarding Plaintiff's vocational potential and earning capacity are highly speculative. Third, Defendant contends that Jayne offers an opinion regarding traumatic brain injuries that he is not qualified to offer.

Defendant's first two arguments are based primarily on Jayne's reliance on documents and reports generated around the time that Plaintiff was discharged from the rehabilitation facility. These reports, authored by one of Plaintiff's treating physician in the rehabilitation facility, Dr. Klingbeil, indicated that Plaintiff would require round the clock nursing for the rest of her life. In fact, Plaintiff does not currently receive any *agency-based* home health care. Her care needs are currently met by her family. Defendant argues therefore that Jayne's opinions are "unsubstantiated, unsupported, unreliable and not based on facts or data." ECF No. 59 at 8.[3] Likewise, Defendant points to Mr. Jayne's opinion

---

[2] Defendant does not challenge Mr. Jayne's qualifications in earnest. Although it asserts in its opening brief that Mr. Jayne is not qualified to make "determinations of need" with respect to Plaintiff's life care plan, and suggest that his opinions contradict that of Plaintiff's treating physician, Defendant does not seriously contest his qualifications to opine on her life care plan or her vocational or earning capacity. ECF No. 59 at 3-4. Rather, the main thrust of Defendant's argument is that Mr. Jayne's treatment of the records and facts "in order to overstate and inflate the costs of plaintiff's future care" is evidence that his opinions are speculative and unsubstantiated. ECF No. 75 at 1. As explained below, these objections go to the weight and sufficiency of Mr. Jayne's opinion, not its admissibility.

[3] This position borders on the preposterous. Taken to its logical extreme, Defendants' position with respect to this evidence would preclude a plaintiff from seeking damages to cover current and future care needs simply because that plaintiff's family may not presently be able to pay for those current and future care needs and/or has chosen for some other reason to presently

11

that Plaintiff will not be capable of competitive employment. Defendant notes that Plaintiff graduated from high school, currently attends college, and plans to pursue a degree and become a forensic psychologist. Therefore, Defendant argues, Mr. Jayne's opinion is unreliable.

Defendant's first two contentions go to the weight, not the admissibility, of Jayne's opinions. Applying the factors under Rule 702 and *Daubert*, Jayne has specialized knowledge regarding the computation of life care costs, and he relied on doctors' reports and other medical evidence in reaching those conclusions. Jayne's review of Dr. Klingbeil's reports provides sufficient foundation under Rule 702 and *Daubert* to allow Jayne to opine on Plaintiff's prospective life care costs. *See Garlick v. County of Kern*, No. 1:13-CV-01051-LJO-JLT, 2016 WL 1461841, at *3 (E.D. Cal. Apr. 14, 2016). To the extent that Defendant argues that Jayne improperly manipulated data in coming to his conclusions in order to skew the life care computation, Defendant is attacking the weight and sufficiency of Jayne's testimony, not its admissibility. Defendant is of course free to cross-examine Jayne about how he selected and used data in reaching his opinions and conclusions. However, the motion to exclude such testimony categorically is DENIED.

As to Defendant's last contention, the Court agrees that Jayne is not qualified to offer an opinion on whether Plaintiff suffered from a traumatic brain injury. Jayne is not a medical doctor and has no apparent scientific training in neurology. However, Plaintiff argues that Mr. Jayne's report only summarizes relevant medical reports that conclude that Plaintiff suffered from a traumatic brain injury. Based on that assessment, Mr. Jayne used a test normally used in his counseling to test whether Plaintiff had an impairment that would affect her daily living. Mr. Jayne concluded that Plaintiff did not have any cognitive issues that impaired her daily living, and therefore did not opine on any costs related to such impairment. *See* ECF No. 59-1 at 98:7-18. Defendant counters in its reply brief that Mr. Jayne does not have the education, training, experience, and degrees to test cognitive function, and therefore should be

---

care for the plaintiff themselves. To the contrary, if liability is established, one of the central purposes of damages in a lawsuit such as this one is to ensure for the care of the injured plaintiff.

barred from referencing or offering opinions on whether his test shows cognitive impairment. ECF No. 75 at 6-7

According to Mr. Jayne's testimony, the cognitive test that he administered is of the type that he would normally conduct in his capacity as a rehabilitation specialist. The Court has concluded that Mr. Jayne is an expert on rehabilitation services and costs. Therefore, the Court declines to exclude such testimony categorically at this time, subject to a later objection on relevance grounds. However, the Court will not allow Mr. Jayne to offer any medical opinion regarding whether Plaintiff suffered from a traumatic brain injury. The motion to exclude Mr. Jayne from offering a medical opinion on whether Plaintiff suffers of suffered from a traumatic brain injury is GRANTED; the motion to exclude testimony regarding the cognitive impairment test is DENIED WITHOUT PREJUDICE.

## V. **CONCLUSION AND ORDER**

For the reasons set forth above:

1. Defendant's motion for a determination that Michigan or Iowa law apply to this case (ECF No. 66) is DENIED;
2. Defendant's motion to exclude Mr. Jayne from testifying regarding Plaintiff's life care costs or vocational potential and earning capacity (ECF No. 59) is DENIED;
3. Defendant's motion to exclude Mr. Jayne from offering a medical opinion on whether Plaintiff suffers of suffered from a traumatic brain injury (ECF No. 59) is GRANTED;
4. Defendant's motion to exclude testimony regarding the cognitive impairment test performed on Plaintiff is DENIED WITHOUT PREJUDICE.

IT IS SO ORDERED.

Dated: **April 26, 2018**   /s/ Lawrence J. O'Neill
UNITED STATES CHIEF DISTRICT JUDGE