# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MIRIAM MICHELLE MENDOZA,** | **1:16-cv-00967-LJO-JLT** |
| **Plaintiff,** | **MEMORANDUM DECISION AND ORDER RE MOTIONS *IN LIMINE*** |
| v. | **ECF Nos. 102, 103, 104** |
| **GENERAL MOTORS LLC, GENERAL MOTORS CORPORATION, CHEVROLET DIVISION OF GENERAL MOTORS, MOTORS LIQUIDATION COMPANY, AND DOES 1 TO 15,** | |
| **Defendants.** | |

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Miriam Michelle Mendoza ("Mendoza" or "Plaintiff") brings this action against Defendants General Motors ("GM") LLC, alleging a cause of action for products liability. Complaint ("Compl."), ECF No. 1-2.

The matter is set for a jury trial on October 16, 2018. Plaintiff filed four motions *in limine*, ECF Nos. 101, 102, 103, 104, and Defendant filed sixteen, ECF No. 99. At the pretrial conference held on August 9, 2018, the Court ruled on the majority of these motions. ECF No. 108. Those rulings are preserved on the record in the hearing transcript. *Id.* The Court asked that the parties file oppositions on four motions *in limine* that were not resolved at the hearing: Plaintiff's motions *in limine* numbered 2 and 4 and Defendant's motions *in limine* numbered 8 and 11. *Id.*; *see also* ECF No. 106. The parties filed oppositions, which also addressed Plaintiff's third motion *in limine*. ECF Nos. 110, 111, 113, 114,

116, 117. The Court finds the matters suitable for decision on the papers and considers them under submission pursuant to Local Rule 230(g).

## II. **STANDARD OF DECISION**

A party may use a motion *in limine* to exclude inadmissible or prejudicial evidence before it is actually introduced at trial. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). "[A] motion *in limine* is an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings." *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). A motion *in limine* allows the parties to resolve evidentiary disputes before trial and avoids potentially prejudicial evidence being presented in front of the jury, thereby relieving the trial judge from the formidable task of neutralizing the taint of prejudicial evidence. *Brodit v. Cambra*, 350 F.3d 985, 1004-05 (9th Cir. 2003).

Motions *in limine* that exclude broad categories of evidence are disfavored and such issues are better dealt with during trial as the admissibility of evidence arises. *See, e.g.*, *Brown v. Kavanaugh*, No. 1:08-cv-01764-LJO, 2013 WL 1124301, at *2 (E.D. Cal. Mar. 18, 2013) (citing *Sperberg v. Goodyear Tire & Rubber, Co.*, 519 F.2d 708, 712 (6th Cir. 1975)); *see also In re Homestore.com, Inc.*, No. CV 01–11115 RSWL CWX, 2011 WL 291176, at *2 (C.D. Cal. Jan. 25, 2011) (holding that motions *in limine* should "rarely seek to exclude broad categories of evidence, as the court is almost always better situated to rule on evidentiary issues in their factual context during trial"); *cf. Oracle Am., Inc. v. Google Inc.*, No. C 10-03561 WHA, 2012 WL 1189898, at *4 (N.D. Cal. Jan. 4, 2012) (concluding that "a broad categorical exclusion" was unwarranted).

Additionally, some evidentiary issues are not accurately and efficiently evaluated by the trial judge in a motion *in limine*, and it is necessary to defer ruling until during trial when the trial judge can better estimate the impact of the evidence on the jury. *See, e.g.*, *United States v. Amaro*, 613 F. App'x 600, 602 (9th Cir. 2015), *cert. denied sub nom. Stewart-Hanson v. United States*, 136 S. Ct. 276 (2015); *see also Jonasson*, 115 F.3d at 440.

# III. DISCUSSION

A. **Plaintiff's Motions *In Limine***

1. **Motion *In Limine* No. 2 To Exclude Misleading Demonstrative Evidence or Untimely Quantitative Evidence Proffered By Defendant's Expert Witness Brent Benson**

Plaintiff seeks to exclude the possible introduction of demonstrative evidence, including composite graphics depicting the subject vehicle collision, prepared by defense expert Brent Benson as exhibits to his expert report. Plaintiff argues that these graphics are misleading. Plaintiff also seeks to preclude Benson from offering evidence as to quantitative or other measurements of the movement of the seats of the Astro van because Benson did not include any such quantitative measurements in his expert report or disclose them during his deposition.

Defendant opposes the exclusion of Brent Benson's testimony regarding computer-generated composite graphics, arguing that the graphics proffered by Benson were produced by GM's experts based on reliable computerized scan data developed from precise measurements. Defendant cites several cases in which district courts in this circuit have allowed the use of computer generated images reconstructing an accident so long as they "fairly and accurately depict[]" what they purport to represent and the opposing party has "an opportunity for cross-examination" about the factual basis for the image. *Friend v. Time Mfg. Co.*, No. 03-343-TUC-CKJ, 2006 WL 2135807, at *7 (D. Ariz. July 28, 2009); *see also Tubar v. Clift*, No. C05-1154-JCC, 2009 WL 1325952, at *7 (W.D. Wash. May 12, 2009). Defendant represents that the experts who created these illustrations will lay proper foundation for how the exhibits were created. Defendant also explains that graphics like the ones produced by Benson are "fundamental elements of accident-reconstruction analyses and are considered standard in the industry," that industry-standard laser scanners typically used by forensic engineers were used to collect data and to generate the images, and that the software used to generate the composites "can accurately 'tie' multiple data sets together and arrive at a singular 3-D model, which can then be studied, measured, and compared to other data sets and 3-D models." ECF No. 116.

Plaintiff argues that Benson's graphics, which depict two vehicles "nested" together, are not based on scanned images of the two vehicles in contact with each other, but are instead based on separate scans of the two vehicles.

Defendant has established that Benson is a qualified expert in accident-reconstruction analysis who is using methods commonly accepted in the industry to create composite graphics and 3-D models. To the extent that Plaintiff objects to the graphics as misleading, that objection goes to the weight to be given to the graphics, not to their admissibility. Plaintiff is free to explore the methods used by Benson to compile the graphics through cross-examination.

As to Plaintiff's objection that Brent Benson is not qualified to opine on the movement of the seats in the Astro van because he did not include such measurements in his expert report or disclose them during his deposition, Defendant argues that the entire data file used to compile the graphics created by Benson was disclosed in Benson's expert file. ECF No. 116 at 10. Here, it appears that the basis for Benson's opinions on the movement of component parts of the van was properly disclosed to Plaintiff. Plaintiff can question Benson on the compilation of this data, and use the data to question the exact movement of the seat and component parts during the collision. In other words, the Court sees no basis to exclude Benson's opinions about the movement of the component parts of the van as unreliable. To the extent that Plaintiff disagrees with Benson's conclusions, Plaintiff is free to cross-examine Benson using his expert report and the accompanying data file.

Lastly, Plaintiff requests a hearing outside the presence of the jury to determine the question of admissibility of. Benson's graphics and his quantification of the movement of the seat and various component parts under Federal Rules of Evidence 103(d) and 104(c). Rule 103(d) provides that the court must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means, and Rule 104(c) provides that the court must conduct a hearing on a preliminary question outside of the jury if: (1) it involves the admissibility of a confession; (2) a defendant in a criminal case is a witness and requests it; or (3) justice requires it. The Court will not know whether a hearing of that nature is

appropriate until Benson has had the opportunity to lay the foundation for his opinions. If Plaintiff does not believe that Benson has laid a foundation for these opinions, she may renew her request for a hearing on admissibility.

Plaintiff's Motion *In Limine* No. 2 to exclude the testimony of Brent Benson is DENIED.

**2. Motion *In Limine* No. 3 To Exclude Unqualified Medical Opinions Proffered By Defendant's Rehabilitation Expert Jack Dahlberg**

In her third motion *in limine*, Plaintiff argues that Defendant's rehabilitation expert, Jack Dahlberg, should be precluded from offering any unqualified opinions on the potential medical risks and complications stemming from Plaintiff's spinal cord injury. Mr. Dahlberg has a background in business administration and rehabilitation counseling. He is not a medical doctor.

At the pretrial conference, the Court held that Dahlberg may testify based on the medical testimony of qualified medical experts, and he may use that information as assumptions, but he cannot come up with his own medical testimony and use that as his basis for any of his opinions. ECF No. 108 at 53:5-9, 54:11-16; *see id.* at 55:11-15 ("[H]e is going to have to rely on people who have the medical background. He has the experience to see what to do and what he is going to have to do as a result of this type of condition, but it is only relevant if a doctor is testifying that's what she can expect."). The Court indicated that the matter was decided and it did not require opposition on Plaintiff's third motion *in limine*.

Plaintiff then submitted a proposed order requesting that the Court exclude Dahlberg from testifying regarding "unqualified medical expert opinions regarding Michelle Mendoza's risk of complications due to her spinal cord injury, her level and amount of attendant care needed, and/or her eventual life expectancy." ECF No. 110. Defendant opposed the language in Plaintiff's proposed order as overly broad, and indicated that it planned to file an opposition. ECF No. 111.[1] In its opposition,

---

[1] Plaintiff objected to Defendant's filing an opposition, arguing that Defendant's objection to the proposed order was untimely and misstated the nature of the Court's ruling. ECF No. 113. Plaintiff also indicated that Defendant's filing an

5

Defendant argues that Dahlberg "has the knowledge, skill, experience, training, and education as a Life Care Planner to testify about plaintiff's Life Care needs, including risks of complications, level of skilled and family-provided care, and residual life expectancy based on his extensive review and analysis of plaintiff's medical records, treatment records, fact depositions, expert depositions, research, studies, and authoritative resources commonly used by Life Care Planners." ECF No. 117 at 6. In essence, Defendant argues that properly relied on medical opinions establishing Plaintiff's diagnosis in forming his opinion.

The Court's ruling at the August 9 hearing was clear. Dahlberg is an expert in rehabilitation costs and life care planning. He is not a medical doctor. He may testify to the life care planning and associated costs for Plaintiff's spinal cord injury. He may not offer his own medical testimony. To the extent that he requires medical opinions to formulate his own opinions regarding life care planning, he must rely on the opinions of qualified medical experts. The Court does not believe that further clarification of its order at the August 9 hearing is necessary.

### 3. **Motion *In Limine* No. 4 To Exclude Any Expert Opinions Or Other Prejudicial Testimony By Barzin Mobasher**

Defendant seeks to offer Dr. Mobasher as a fact witness to testify that Plaintiff's expert, Dr. Bosch, did not have permission to use Arizona State University's ("ASU") laboratory to perform the testing on which his expert opinion is based. Plaintiff moves to exclude the testimony of Dr. Mobasher as irrelevant, or, alternatively, because the risk of prejudice in allowing such testimony substantially outweighs its probative value. Defendant argues that Dr. Mobasher's testimony is relevant because it demonstrates that Dr. Bosch used ASU's equipment to conduct his tests without ASU's authorization and without paying to use it, which undermines his credibility and the credibility of his analyses.

Defendant has not demonstrated that there is a nexus between the subject matter that Dr.

---

opposition would amount to an improper motion for reconsideration. *Id.*

6

Mobasher would testify to and the accuracy or validity of Dr. Bosch's expert testimony. In other words, Dr. Mobasher's factual testimony that Dr. Bosch was not authorized to use the equipment at ASU does not have any apparent bearing on the accuracy of his conclusions or opinions. Defendant contends that Dr. Mobasher's testimony could call "the credibility of Dr. Bosch's opinions . . . into question," but in fact the testimony that Dr. Mobasher would offer does not relate to those opinions or to Dr. Bosch's credibility as an expert on the subject on which he is testifying. It appears that Dr. Mobasher's testimony might call into question Dr. Bosch's character – in that he may have conducted the tests at ASU without authorization and without paying for use of the facility – but not in a way that is connected to the *opinions* expressed by Dr. Bosch. Under the circumstances, such testimony would be irrelevant to the matter at hand, and otherwise inappropriate.

Defendant contends that "plaintiff is attempting to bolster Dr. Bosch's credibility through the fact that he conducted the testing at ASU, leaving the jury to infer that ASU endorsed the testing and the calibration of the machinery with which it was performed." ECF No. 118 at 8. To the extent that Defendant questions the calibration of the machinery or the thoroughness of the testing, it is certainly proper for Defendant to cross-examine Dr. Bosch on those subjects. Likewise, to the extent that Dr. Bosch attempts to bolster the credibility of his own studies by making reference to ASU's credibility as an institution, he is subject to cross examination on the point that he is not affiliated with the institution and that the institution does not endorse or credit his tests. Extrinsic evidence that he was not authorized by the university to conduct the experiment is simply not relevant to either line of inquiry.[2] Therefore, Dr. Mobasher's testimony is excluded and Plaintiff's Motion *In Limine* No. 4 is GRANTED.

**B.**    **Defendant's Motions *In Limine***

    **1.**    **Motion *In Limine* No. 8 To Preclude Reference To Seat Performance In The Astro**

---

[2] Of course, if Dr. Bosch were to testify that he was affiliated with ASU or that they endorsed his analyses, the door would be open to Defendant to introduce evidence relevant to refuting those points as a factual matter.

7

1 **Van As Evidence Of The Lack Of Severity Of This Crash**

At the August 9 pretrial conference, the Court indicated that its tentative ruling was to grant GM LLC's Motion *in Limine* No. 8, but the Court allowed Plaintiff the opportunity to file an opposition if she wished.

In her response, Plaintiff submits to the Court's tentative ruling. For the reasons set forth by the Court at the August 9 hearing, GM LLC's Motion *In Limine* No. 8 is GRANTED.

**2. Motion *In Limine* No. 11 To Preclude Plaintiff's Expert Mark Pozzi From Testifying Regarding The GM Suburban, GM's Alleged Motives Regarding Fuel Tank Placement In The Suburban, Or The *Ochoa v. GM* Case In Which Mr. Pozzi Was The Plaintiffs' Expert**

In her response, Plaintiff indicates that, having reviewed Motion *In Limine* No. 11 more closely, Plaintiff agrees that Mr. Pozzi will not testify that he showed full-size van testing to GM engineers back in the 1970s. Since the objection is withdrawn, GM LLC's Motion *In Limine* No. 11 is GRANTED.

## IV. CONCLUSION AND ORDER

Accordingly,

1. Plaintiff's Motion *In Limine* No. 2 to exclude the testimony of Brent Benson is DENIED;

2. The Court declines to revisit Plaintiff's Motion *In Limine* No. 3 to preclude Defendant's expert Jack Dahlberg from offering unqualified medical opinions. The Court previously granted the motion *in limine*, subject to the Court's explanation of the scope of the impermissible testimony, on the record at the August 9 hearing;

3. Plaintiff's Motion *In Limine* No. 4 to Exclude the Testimony of Dr. Mobasher is GRANTED;

4. Defendant's Motion *In Limine* No. 8 to preclude reference to seat performance in the Astro van as evidence of the lack of severity of this crash is GRANTED;

5. Defendant's Motion *In Limine* No. 11 to preclude Plaintiff's expert Mark Pozzi from testifying regarding the GM Suburban, GM's alleged motives regarding fuel tank placement in the Suburban, or the *Ochoa v. GM* case in which Mr. Pozzi was the plaintiffs' expert is

GRANTED.

The motions have now been decided and counsel and parties are expected to abide by the rulings completely. Failure to so abide will be met with significant sanctions.

IT IS SO ORDERED.

Dated: **September 25, 2018**     /s/ Lawrence J. O'Neill
UNITED STATES CHIEF DISTRICT JUDGE